UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOON S. MOON, an individual,
and PATTERSON LABORATORIES,
INC., a Michigan corporation,**

                 **Plaintiffs,**

                                       **Case No. 05-70228**

v.

                                       **HONORABLE DENISE PAGE HOOD**

**SCP POOL CORPORATION and
SCP DISTRIBUTORS, L.L.C.,
foreign corporations,**

                 **Defendants.**
_____/

**MEMORANDUM OPINION & ORDER
DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
OR IN THE ALTERNATIVE TRANSFER VENUE**

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, Transfer Venue. Defendants filed their motion on January 27, 2005. Plaintiffs responded on February 22, 2005. Defendants filed a reply on March 4, 2005. Defendants and Plaintiffs each filed an Ex Parte Motion to File Supporting Declarations on April 13, 2005 and April 15, 2005, respectively.

In their Motion, Defendants SCP Pool Corporation and SCP Distributors, formerly known as South Central Pool Supply, Inc. seek to dismiss or, in the alternative, transfer this matter under three alternative theories. First, Defendants argue the action filed by Plaintiffs Joon S. Moon & Patterson Laboratories ("Moon" and "Patterson") in the United States District Court for the District

1

of Nevada, Reno Division involves the same core issues as and substantially overlaps claims in the instant action and involves substantially similar parties. Defendants claim the Court should dismiss or transfer this action to the District of Nevada under the "first-to-file" rule. Second, Defendants believe this Court should transfer this action to the District of Nevada under 28 § U.S.C. 1404(a) because: (1) such transfer will enhance the convenience of the parties and witnesses, and is in the interests of justice; and (2) Plaintiff Moon could have originally brought this action in the District of Nevada. Finally, Defendants argue improper venue under 28 U.S.C. § 1406(a) should lead this court to dismiss or transfer this action because none of the events supporting the allegations in Plaintiffs' Complaint occurred in the Eastern District of Michigan or any other part of the state of Michigan.

## II. STATEMENT OF FACTS

Benson Pump Company ("Benson Pump"), now known as Mt. Rose Capital, Inc. ("Mt. Rose"), filed a separate action in the Second Judicial District Court of the State of Nevada in and for the County of Washoe on July 9, 2002, involving an Asset Purchase Agreement between Benson Pump and SCP Distributors. (See Defs'. Mot., Ex. 4.) SCP Distributors removed the action to the District of Nevada. (Id., Ex. 5.) Plaintiffs filed this action in the Circuit Court for the County of Wayne in the State of Michigan. (Id. at 2.) Plaintiffs' Complaint alleges five counts, four counts alleging Breach of Contract and one alleging Accounting. Defendants removed this action to federal court pursuant to 28 U.S. C. § 1441(a). Defendants brought a counterclaim against Benson Pump and filed a third party demand against Benson-related entities. (Defs.' Br. at 1.) Finally, there is an arbitration proceeding involving Defendants and Benson Pump to determine an issue relating to Benson Pump's accounts receivable. (Pls.' Br. in Opp. at 3.) The remaining issues are pending in

the District of Nevada where the parties are currently engaged in the latter stages of discovery. (Defs.' Mot. at 2, 4.)  The District of Nevada court has issued a Scheduling Order setting all cutoff dates and deadlines, except the date of trial. (Id.) The deadline for amending the pleadings and/or adding parties in the Nevada action was February 1, 2005. (Id.)

Defendants claim Plaintiff Moon was and/or is an owner of both Benson Pump, an Illinois Corporation, and Patterson Laboratories, a Michigan Corporation. (Id. at 2.) Defendants also claim Plaintiffs' Complaint involves issues related to the Asset Purchase Agreement between Benson Pump and Defendant SCP Distributors. (Id.) Defendants claim the issues raised in both suits have at all times been addressed together. (Id.) In support of their claim, Defendants state Plaintiff Moon repeatedly raised issues relating to the liquid chlorine sales between Plaintiff Patterson and Defendants and the Import Broker Agreement between Plaintiff Moon and Defendants while acting on behalf of Benson Pump. Plaintiff Moon raised these issues while negotiating the post-closing adjustments to the Asset Purchase Agreement (at issue in the Nevada action) in Chicago, Illinois. (Id.) Of particular importance, Defendants provide a declaration from A. David Cook, Vice President of SCP Distributors, LLC, and SCP Pool Corporation, indicating he met with Plaintiff Moon in Reno, Nevada in late 1998 for negotiations. (Defs.' Supp. Decl. of A. David Cook at 1.) Plaintiff Moon responded to this allegation with a supplemental declaration indicating he met with Mr. Cook solely to discuss the Benson Pump/SCP transaction. (Pls.' Supp. Decl. of Joon S. Moon at 2.) Specifically, Plaintiff Moon declares, "[a]t no time did I have negotiations with David Cook concerning the terms or conditions of my Import Broker Agreement or Patterson Laboratories, Inc.'s 'last look' agreement on liquid pool product sales." (Id.)

Plaintiffs indicate Plaintiff Moon is one of three owners of Benson Pump. (Pls. Br. in Opp.

3

at 2.) Further, Plaintiffs state their Complaint involves issues completely independent of the Nevada action. (Id. at 3.)

### III. STANDARD OF REVIEW

**A.     First-to-File Rule**

The first-to-file rule is a firmly grounded doctrine intended to encourage comity among federal courts of equal rank. *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.,* 16 Fed. Appx. 433, 437 (6th Cir. 2001) (unpublished). This Circuit has referenced the rule without discussing it by name. *Id.*; *see, e.g.*, *In re American Med. Sys., Inc.,* 75 F. 3d 1069, 1088 (6th Cir. 1996) ("Although there is no precise rule that, as between federal district courts, one court should defer to the other, the general principle is to avoid duplicative litigation.") (internal quotation omitted); *Barber-Greene v. Blaw-Knox Co.,* 239 F.2d 774 (6th Cir. 1957). In *Barber-Greene*, the court explained the circumstances in which the rule should be applied:

> When the two suits have substantially the same purpose and the jurisdiction of the courts is concurrent, that one whose jurisdiction and process are first invoked by the filing of the bill is treated...as authorized to proceed with the cause....The confusion and uncertainty are thus avoided which might otherwise result from the attempt...to determine priority of service of process in the two suits.

*Barber-Greene,* 239 F.2d at 778. Specifically, the rule provides, "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" *Zide*, 16 Fed. Appx. at 437 (quoting *In re Burley*, 738 F.2d 981, 988 (9th Cir. 1984)).

Where equity so demands, district courts have the discretion to dispense with the first-to-file rule. Factors weighing against enforcement of the first-to-file rule include extraordinary

circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping. *Id.* The Eighth Circuit characterizes the first-to-file rule as a "policy of comity [that] has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of 'similar cases...in different federal district courts.'" *Equal Employment Opportunity Commission v. University of Pennsylvania*, 850 F.2d 969, 971 (8th Cir. 1988). The authority to transfer in accordance with this rule is not, however, "a mandate directing wooden application of the rule....District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-to file[] rule." *Id.* at 972. This Court "must consider the factual circumstances in each case before applying this rule." *Boatmen's First National Bank of Kansas City v. Kansas Public Employees Retirement System*, 57 F.3d 638, 641 (8th Cir. 1995). The letter and spirit of the rule are grounded in equitable principles. *Equal Employment Opportunity Commission v. University of Pennsylvania* at 977. This rule's applicability should be determined in view of the totality of the circumstances with the rule's primary purpose of not burdening the federal judiciary, preventing conflicting judgments, and fundamental fairness. *Id.*

**B.** **Venue**

This Court must make a threshold determination as to whether venue is proper in this district pursuant to 28 U.S.C. §1391 in order to determine which statute, 28 U.S.C. §1404(a) or §1406(a), will govern the Court's decision on the motions at issue.

For any district court to have venue, there must be personal jurisdiction over the defendant in the forum state. Personal jurisdiction exists where "such jurisdiction is (1) authorized by the law of the state in which it sits, and (2) satisfies the requirements of the Due Process Clause of the Fourteenth Amendment." *Global Crossing Telecommunications, Inc. v. World Connection Group,*

*Inc.*, 287 F. Supp.2d 760, 764 (citing *Neogen v. Neo Gen Screening*, 282 F.3d 883, 887 (6th Cir. 2002)).

Pursuant to the first prong of the jurisdictional test, the Michigan long-arm statute provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships: (1) The transaction of any business within the state...

MICH. COMP. LAWS. § 600.715 (1996). The "transaction of any business" under the statute is established by a prima facie showing by the plaintiff of defendant's involvement in "the slightest act of business in Michigan." *Neogen*, 282 F. 3d at 888. "Neogen has presented a prima facie case that NGS transacted business in Michigan when it accepted blood for testing from Michigan, mailed the test results to Michigan, made the results accessible to its Michigan customers on its website, and accepted payment through the mail from Michigan." *Id.*

In terms of the Due Process Clause of the Fourteenth Amendment, there are two requirements. The plaintiff must first establish minimum contacts. *Global Crossing,* 287 F. Supp.2d at 764. The plaintiff must further demonstrate "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). The Sixth Circuit determines whether the assertion of personal jurisdiction over an out-of-state defendant satisfies due process through a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (citing *Neogen,* 282 F. 3d at 889-890).

Once personal jurisdiction has been established, the court proceeds to determine whether venue is proper under 28 U.S.C. § 1391. Federal jurisdiction in the case at bar is based on diversity of citizenship. 28 U.S.C. §1391(a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**C.     Transfer Pursuant to 28 U.S.C. § 1404(a)**

28 U.S.C. § 1404 provides, in relevant part:

> (a)     For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Under this rule, district courts have broad discretion to transfer a case to any judicial district where it may have been brought originally. *Amphion, Inc. v. Buckeye Electric Co.,* 285 F. Supp.2d 943, 947 (E.D. Mich. 2003). To determine whether to transfer a case, district courts should "weigh in the balance a number of case-specific factors." *Stewart Organization, Inc. v. Ricoh Cop.,* 487 U.S. 22, 32 (1988). Specifically, the court should consider:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Helder v. Hitachi Power Tools, Ltd.,* 764 F. Supp. 93, 96 (E.D. Mich. 1991). Courts may additionally consider "any factor that may make any eventual trial 'easy, expeditious, and

7

inexpensive.'" *Int'l Car Show Assoc. v. ASCAP*, 806 F. Supp. 1308, 1310 (E.D. Mich. 1992) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947)).

In all cases, venue must be proper in both the transferor and the transferee court under 28 U.S.C. § 1391. Furthermore, "[d]istrict courts should give deference to a plaintiff's choice of venue." *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 658 (E.D. Mich. 1992). On the other hand, in a case where "the operative facts upon which the litigation is brought bear little material connection to the chosen forum," the plaintiff's choice of forum is given reduced emphasis. *Nieves v. American Airlines*, 700 F. Supp. 759, 772 (S.D.N.Y. 1988).

**D. Dismissal or Transfer Pursuant to 28 U.S.C. § 1406(a)**

28 U.S.C. § 1406 provides, in pertinent part:

(a)   The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

A district court may transfer venue under either § 1404(a) or, in the alternative, § 1406(a). The proper statute under which a court may grant a transfer of venue is governed by whether personal jurisdiction over the defendant exists. *Global Crossing,* 287 F. Supp.2d at 764. Where § 1404(a) permits transfer only if venue is proper in both the transferor and transferee districts, § 1406(a) "enables a district court to transfer venue 'in the interest of justice' when venue is improper in the original forum... ." *Id.* at 763. In other words, a transfer under 1404(a) may not be granted where the transferring court lacks jurisdiction over the defendant whereas a court may transfer venue under 1406(a) even if it lacks personal jurisdiction over a defendant. *Id.* (citing *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir. 1993)).

**IV. ANALYSIS**

## A. First-to-File Rule

Defendants do not provide sufficient precedent in favor of transfer to the District of Nevada under the first-to-file rule. All the cases cited by Defendants pertain to a particular circumstance where one party files in one district and the opposing party subsequently files in another district. *See, e.g., Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 2001 WL 897452 (6th Cir. Jul. 31, 2001); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985); *Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403 (5th Cir. 1971).

Even in the unique circumstance where the same party sues in two districts, Defendants have not provided a sufficient basis to declare a substantial overlap under the first-to-file rule. Defendants correctly assert "neither the issues nor the parties in the parallel suits need to be identical for the 'first-to-file' rule to apply." (Defs.' Br. at 5.) However, courts generally interpret the term "substantial overlap" as a circumstance where the issues converge to the extent that the latter court's adjudication of the action will interfere with the adjudication of an action already filed in a different court. For example, in *West Gulf Maritime Ass'n*, the court found the decision of the latter filed action would intrude upon the decision of the first filed action because of substantial overlap of the issues. 751 F.2d at 731. In *Mann Manufacturing,* the court determined the actions of the latter district "seriously interfered with the continuing power" of the original district court to supervise its own injunction. 439 F.2d at 408.

The circumstances in the case at bar do not support a finding of substantial overlap of the issues. Defendants rely heavily on *Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc.*, 2001 WL 1414868 (D.Del. Nov. 13, 2001), for the proposition that the parties need not be identical. In *Dippold-Harmon*, Lowe's Home Centers, Inc. a wholly-owned subsidiary of Lowe's Companies,

9

Inc., filed a complaint against Dippold-Harmon Enterprises, Inc. in North Carolina. Dippold-Harmon subsequently filed an action against Lowe's Companies in Delaware. *Id.* at 1-2. The *Dippold-Harmon* court ruled Lowe's Home Centers and Lowe's Companies are effectively the same party because Lowe's Home Centers is a wholly-owned subsidiary of Lowe's Companies over which Lowe's Companies maintains strict control. *Id.* at 3 ("It sends its representatives to the Home Centers stores and then directs those stores not in compliance with Lowe's policies to take certain actions to come into compliance... Lowe's also publically admits to otherwise 'supervising and overseeing' its stores, and sending Lowe's personnel to those stores..."). The case at bar is not analogous to the situation confronted in *Dippold-Harmon*. Negotiations between Defendants and Plaintiff Patterson substantially involved the services of Plaintiff Moon. Plaintiff Moon also owns both Plaintiff Patterson and Benson Pump. However, the relationship between Plaintiff Patterson and Benson Pump ends with this similarity.

> Furthermore, *Dippold-Harmon* held that:
>
> Both actions...concern different facets of the same business relationship between the parties. Specifically, countertops for Lowe's and Home Centers' customers. A decision by the North Carolina court on the validity, or breach, of the written agreement will bear directly on the alleged oral agreement concerning the same type of services.

*Id.* at 5. No such finding can be made here.

Defendants also rely on *EBW, Inc. v. Environ Products, Inc.,* 1996 WL 550020 (W.D. Mich. Jul. 8, 1996), to support their claim that the issues substantially overlap. *EBW* involved an action filed by Environ in Pennsylvania for patent infringement followed by an action filed by EBW in the Western District of Michigan requesting a declaratory judgment that the patent owned by Environ is invalid. *Id.* at 1-2. After finding the identity of the parties involved to be substantially similar, the

court found, although not identical, the issues involved "[t]he same invention, the same, patent, and same series of events." *Id.* at 3. The *EBW* court emphasized the fact that "this common subject matter and the substantial overlap between the two actions clearly support[] the defendants' argument that duplication of effort and possibly inconsistent outcomes are threatened." *Id.* In this case, the issues fail to present such a standard of substantial similarity as set forth by the *EBW* court.

Both *Dippold-Harmon* and *EBW* involved the same subject matter and the same facts with substantially similar parties giving rise to substantially similar issues. Defendants do not claim the issues are substantially similar. They merely claim the fact that similar pieces of evidence bear on both the Asset Purchase Agreement and the liquid-chlorine sale and that Plaintiff Moon was substantially involved in both agreements. Furthermore, the Nevada case involves an Asset Purchase Agreement pursuant to which Defendants agreed to purchase the assets of Benson Pump. The case at bar involves an Import Broker Agreement between Plaintiff Moon and Defendants and a contract for liquid-chlorine sales between Plaintiff Patterson and Defendants. Neither the subject matter nor the facts of these agreements substantially overlap.

In the absence of any evidence of substantial similarity in the identities or the issues of the Nevada and Michigan cases, the Court denies Defendants' Motion to Transfer on the basis of the first-to-file rule.

**B.     Venue**

Defendants conceded the propriety of venue in this district during oral argument. Proper venue implies the issue of transfer will be governed by 28 U.S.C. § 1404(a). Analysis under 28 U.S.C. § 1406(a) is not appropriate, which precludes the Court from dismissing the action.

**C.     Transfer Pursuant to 28 U.S.C. § 1404(a)**

11

District courts have broad discretion to transfer under 28 U.S.C. § 1404(a). Plaintiffs' choice of forum is Michigan. The Supreme Court noted "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors *clearly* point towards trial in the alternative forum... ." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (emphasis added).

Defendants state the first five factors weigh heavily in support of transfer. (Defs.' Br. at 9.) To begin, Defendants claim Plaintiff Moon "on information and belief, resides in and maintains an office in Reno, Nevada." (Id. at 9-10.) For this reason and because of Plaintiff Moon's role in negotiations for Plaintiff Patterson, Defendants claim Michigan is no more convenient for Plaintiffs than Nevada. (Id. at 10.) Plaintiff Moon, however, provides a signed declaration citing Washington and Oregon as his residences without any mention of Nevada. (Pls.' Br., Ex. B at 3, ¶ 11.) The declaration states that Plaintiff Moon has not had an office in Nevada since June of 2003. (Id. at 3, ¶ 12.) Defendants offer support for Plaintiff Moon's claim in Exhibit B of their Reply. (*See* Defs.' Reply Br., Ex. B.) This exhibit consists of Plaintiff Patterson's profit updates from 1996-2004. (Id.) Defendants offer this evidence to show Plaintiff Moon listed himself as President of Plaintiff Patterson, a claim with which Plaintiffs agree, and that he lists his office in Reno, Nevada on Plaintiff Patterson's profit reports. (Id. at 4.) However, consistent with Plaintiff Moon's assertions, this exhibit in fact shows he ceased listing an office in Nevada after 2003. In 2004, Plaintiff Moon lists an office in Vancouver, Washington. (See id., Ex. B.) Short of Plaintiff Moon's alleged connection to Nevada and Plaintiff Patterson, Defendants provide no other rationale to support their claim that Nevada is a more convenient forum for Plaintiff Patterson. (Defs.' Br. at 10.) Given the lack of clarity regarding Plaintiff Moon's connection to Nevada and no connection evident between

Plaintiff Patterson and Nevada, Defendants fail to provide sufficient evidence that transfer is clearly more convenient to the parties.

Defendants state Plaintiff Moon and his employees are subject to process in Nevada as are Defendants and their personnel. (Id.) While Plaintiff Moon may be subject to process with respect to the Nevada litigation along with Benson Pump's employees, there is no evidence on record that Plaintiff Patterson or its employees are subject to process in the state of Nevada. Plaintiffs highlight the fact that:

> Patterson's employees who are expected to testify as to orders received from SCP and shipped by Patterson are based in Michigan. Further, those employees of SCP who carried out portions [of] the Patterson/SCP agreement (i.e. discussed the agreement, submitted orders and received liquid pool products) are, upon information and belief, based in Michigan and the Midwest SCP branches. No witnesses expected to testify in this matter...are located in Nevada.

(Pls.' Br. at 9.) The burden placed on Plaintiff Patterson's witnesses if this Court were to transfer this case, along with the question of whether service of process extends to relevant witnesses, strongly weighs against transfer. Furthermore, the cost of obtaining willing witnesses will significantly increase for Plaintiff Patterson since all of its witnesses would have to be transported to Nevada. Defendants argue all of its witnesses will be outside of the Court's jurisdiction. (Defs.' Br. at 11.) This is doubtful given the fact that Defendants have multiple branches in Michigan. (*See* Pls.' Br., Ex. A.) The Court finds Defendants have not made a sufficient showing to justify transfer based on convenience of the witnesses and availability of process to compel attendance of unwilling witnesses.

Defendants also claim sources of proof are more easily transportable to Nevada than Michigan. (Defs.' Br. at 10.) Defendants argue their evidence is likely located in Louisiana and can be readily transported to Nevada. (Id.) If Defendants need to transport their evidence from one state

13

to another regardless of whether their motion is granted or denied, it is not clear to the Court how an undue burden will be placed upon them if the destination is Michigan instead of Nevada. The Court finds relative ease of access to sources of proof is no more or less inhibited by litigation of this case in Michigan.

In terms of the practical problems associated with trying the case most expeditiously and inexpensively, the Court finds the Nevada action has no bearing on the timely and monetary efficiency of this action. Defendants claim "the facts that are relevant to this action substantially overlap with facts being developed presently in the Nevada Action" such that "the parallel suits [] proceed[ing] in both forums, [will] result[] in a tremendous waste of judicial resources" and "raises a significant risk of inconsistent results." (Id. at 12.) These concerns were addressed above with respect to the first-to-file rule. In addition to the foregoing discussion, discovery in the Nevada action is likely to conclude at the end of the summer and the issues pertaining to this case would require an additional six months of discovery. Plaintiff Patterson, who has no interest in the Nevada action, would have to spend a considerably greater amount of time litigating its claim, which is inefficient. Defendants have made no showing that a transfer would be significantly less costly and more expeditious for them, nor have they shown it would not be more costly to Plaintiffs.

The Court finds Defendants failed to make a sufficient showing to meet their burden under 28 U.S.C. § 1404(a) to overcome the Plaintiffs' choice of Michigan as its forum.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, Transfer Venue **[Docket No. 2, filed January 31, 2005]** is DENIED.

                 /s/ Denise Page Hood
                 DENISE PAGE HOOD
                 United States District Judge

DATED:  May 27, 2005