UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOON S. MOON, an individual,**
**and PATTERSON LABORATORIES,**
**INC., a Michigan corporation,**

                **Plaintiffs,**

                              Case No. 05-70228

**v.**

                              HONORABLE DENISE PAGE HOOD

**SCP POOL CORPORATION and**
**SCP DISTRIBUTORS, L.L.C.,**
**foreign corporations,**

                **Defendants.**
_____/

<u>**ORDER**</u>

**I.      INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment filed April 28, 2006, and Plaintiffs' Motion for Additional Discovery filed May 30, 2006. Plaintiffs filed a Response to Defendants' Motion for Summary Judgment on May 27, 2006. Defendants filed a Reply on June 15, 2006. Defendants filed a Response to the Motion for Additional Discovery on June 16, 2006.

**II.     STATEMENT OF FACTS**

Plaintiff Joon S. Moon is the owner of Plaintiff Patterson Laboratories, Inc. ("Patterson"), a company that produced pool hypochlorite and pool antifreeze. (Compl. ¶ 6). Defendants SCP Pool Corporation and SCP Distributors, LLC ("SCP") are the largest wholesale distributor of swimming pool supplies and related equipment. (Compl. ¶ 5). Plaintiff Moon is also the owner of

Benson Pump Company, a pool supplies distributorship that was sold to Defendant in 1999. (Compl. ¶ 7). Plaintiff Moon had contacts with a Far East manufacturer, Kwang Sung Company, Ltd. (Compl. ¶ 9). On January 8, 1999, Plaintiff Moon and Defendants entered into an Import Broker Agreement ("IBA"). (Compl. ¶ 11). The IBA requires Defendants to pay Plaintiff Moon a commission on the purchase amount of products purchased pursuant to the IBA. (Compl. ¶ 13). Plaintiffs allege that Defendants began purchasing winter covers in violation of the IBA. (Compl. ¶ 14-15). Plaintiffs also allege that Defendants have failed to pay Plaintiff Moon commissions owed under the IBA. (Compl. ¶ 16). Plaintiffs further allege that around the time of the IBA and the Sale of Benson Pump Company, Defendants agreed to purchase liquid pool products from Patterson. (Compl. ¶ 18). Plaintiffs allege that Defendants failed to purchase liquid pool products from Patterson in violation of the parties' agreement. (Compl. ¶ 20). The Complaint was filed on January 21, 2005.

## III.    STANDARD OF REVIEW

Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most

2

favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

## IV.   APPLICABLE LAW & ANALYSIS

### A.   Defendants' Motion for Summary Judgment

Defendants assert that summary judgment as to Plaintiffs' contract law claims under the IBA is appropriate because they did not breach the IBA and there is no basis for an equitable claim of unjust enrichment or quantum meruit. Defendants also argue that Plaintiffs are not entitled to compel an accounting.

A plaintiff must establish the following to state a breach of contract claim: (1) that the parties entered into a valid enforceable contract that included the terms and conditions claimed by plaintiff; (2) that the defendant breached the contract; and (3) that the defendant's breach caused a loss to the plaintiff. *Platsis v. E.F. Hutton & Co.*, 642 F.Supp. 1277 (W.D. Mich. 1986); *Pittsburgh Tube Co. v. Tri-Bend, Inc.*, 185 Mich.App. 581 (1990). In Michigan, "[w]hether a breach is material is a question of fact." *Heidtman Steel Prod., Inc. v. Compuware Corp.*, 164 F.Supp.2d 931, 936 (N.D. Ohio 2001) (citing cases applying Michigan law, *Werner Gommeringer v. Amway Corp.*, No. G85-832, 1988 U.S. Dist. LEXIS 17824, *6, (W.D. Mich. 1988) (unpublished) and *Pratt v. Van Rensselaer*, 235 Mich. 633, 209 N.W. 807 (1926)).

#### 1.   Breach of Contract - Import Broker Agreement

Plaintiffs allege that Defendants violated the agreed upon IBA by failing to pay commissions to Plaintiff Moon and by purchasing winter covers from the Far East Region. Plaintiffs further assert that Defendants submitted purchase orders directly to Kwang Sung Company, Ltd. ("Kwang Sung"), a winter cover manufacturer in the Far East with a distribution arm in the United States, Kwang

Sung America, Inc. ("Kwang Sung America"). It is alleged that these purchase orders were diverted through one of Defendants' current suppliers, Cantar, to avoid paying Plaintiff Moon a commission.

Defendants argue that they did not breach the IBA. Defendants assert that summary judgment is appropriate as (1) it purchased winters covers from companies expressly identified in the IBA as approved companies from which Defendants could purchase, (2) any purchases from Kwang Sung America were from a company based in the United States and as such did not violate the IBA, and (3) Plaintiffs are not entitled to commissions on any purchases it made from domestic suppliers. Defendants further argue that the orders placed with Kwang Sung America were later cancelled and the product was purchased from Cantar.

The relevant portions of the IBA read:

1) The Company grants the Import Broker the exclusive right to purchase winter covers within the Far East Region only, provided that the pricing, quantity, quality, and other material terms of any purchase by the Import Broker must be approved by the Company in writing before such purchase is binding on the Company.

2) A commission of 5% of the net purchase amount (which includes all discounts and rebates received by the Import Broker) of the products shall be paid by the Company to the Import Broker.
   *          *          *
5) The Company shall have the right to purchase winter covers (Imported or domestically produced) from any company that is based in the United States or Europe, such as but not limited to, Cookson/Pacific, Swimline, Cantar, Century Products.

(Defs.' Mot. Summ. J., Ex. A-1).

Plaintiffs claim that the IBA gives Plaintiff Moon the exclusive right to purchase winter covers that originate in the Far East Region. Plaintiffs argue that Defendants' purchase of winter covers originating in the Far East from a domestic company is a violation of the IBA. Defendants assert that Kwang Sung America is a company based in the United States. To support this assertion

4

Defendants submitted a copy of Kwang Sung America's Articles of Incorporation authorized by the State of California. (Defs.' Mot. Summ. J., Ex. D). Plaintiffs further assert that the terms of the IBA are ambiguous, and create a question of fact. To support this argument the Plaintiffs submit: (1) the deposition testimony of Arthur David Cook, Vice President of Defendant corporations, wherein he testifies that Defendants did not have any Far East connections or suppliers at the time, (Pls.' Resp., Ex. 2 at 100-01) and (2) the deposition testimony of John Murphy, Vice President of Sourcing for Defendant corporations, in which Mr. Murphy testifies that Defendants wanted to make sure that the IBA "excluded Europe," (Pls.' Resp., Ex. 4 at 123-24), and (3) evidence that Kwang Sung America is only a distribution company of Kwang Sung and does not manufacture winter covers. (Pls.' Resp., Ex. 30).

In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id*. If the intent is clear from the language of the contract itself, there is no place for further consideration or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999). A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary and popular sense." *Michigan Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81 (1994). Unambiguous contract provisions are not subject to interpretation and must be enforced as written. *Id*.

A contract may be considered ambiguous when terms are factually inconsistent or the phraseology can suggest different meanings or obligations to be undertaken. *Port Huron Educ. Ass'n MEA/NEA v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 323 (1996). Contract provisions are

considered ambiguous when the "terms are reasonably and fairly susceptible to multiple understandings and meanings." *Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (*citing Michigan Mut. Ins. Co.*, 204 Mich. App. at 81).

The initial determination of whether the contract language is ambiguous is a question of law for the court to decide. *Rainbow Nails Enterprises, Inc. v. Maybelline, Inc.*, 93 F.Supp.2d 808, 820 (E.D.Mich. 2000) (*citing Port Huron Educ. Ass'n*, 452 Mich. at 323). Once the court determines that the contract is ambiguous, it is subject to further construction or interpretation. "It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 469 (2003). "In resolving such a question of fact, i.e., the interpretation of a contract whose language is ambiguous, the jury is to consider relevant extrinsic evidence." *Id*. "Looking at relevant extrinsic evidence to aid in the interpretation of a contract whose language is ambiguous does not violate the parol evidence rule." *Id*. at 470. Parol evidence bars language which adds to or detracts from the writing, but not evidence which merely ascertains the meaning of what the parties intended. *Id*. Ambiguity in a contract is resolved against the party who prepared it. *Lichnovsky v. Ziebart Int'l Corp.*, 414 Mich. 558, 566 (1999).

It is not clear from the face of the IBA whether Defendants' purchase of winter covers from an American subsidiary of a company based in the Far East is a violation of the parties' agreement. While the IBA reserves the exclusive right to purchase winter covers within the Far East Region, the Company retained the right to purchase winter covers, imported or domestic, from any United States or European "based" company. Whether or not Kwang Sung America is a company "based" in the United States is ambiguous. Resolution of such an ambiguity is a question of fact to be

6

decided by the trier of fact. As such, summary judgment is not appropriate as to Plaintiffs' breach of contract claim regarding the IBA.

### 2. Promissory Estoppel and Unjust Enrichment - Import Broker Agreement

Plaintiffs allege an equitable claim of promissory estoppel, arguing that: (1) Defendants made definite and unequivocal promises to Plaintiff Moon, including but not limited to the promise to pay Plaintiff Moon commissions on all winter covers Defendants purchased from the Far East Region and Kwang Sung; (2) Defendants reasonably expected that their promises would induce Plaintiff Moon to act to his detriment by undertaking work on behalf of Defendants and/or taking action inuring to Defendants' benefit; (3) Plaintiff Moon reasonably relied on the promises of Defendants; and (4) Plaintiff Moon has sustained damages in the amount of commissions owed by Defendants to him calculated as 5% of the net purchase amount of winter covers purchased by Defendants from the Far East Region.

Plaintiffs also allege an equitable claim of unjust enrichment or quantum meruit, contending that: (1) it is customary in the industry for a company such as Defendants to pay commissions to individuals who facilitate contact between that company and suppliers from which that company ultimately purchases products; (2) Defendants have been unjustly enriched because they purchased winter covers and other products from the Far East Region without paying Plaintiff Moon the customary commissions; and (3) Plaintiff Moon sustained damages in the amount of commissions owed by Defendants to him calculated as 5% of the net purchase amount of winter covers purchased by Defendants from the Far East Region

Defendants assert that summary judgment should be granted as to Plaintiffs' promissory estoppel and unjust enrichment/quantum meruit claims with respect to Plaintiff Moon. Defendants

argue that the subject matter of these claims is governed by the IBA and there is no remedy pursuant to quasi-contractual theories when the parties have a contractual relationship. Without citing any case law, Plaintiffs counter that these theories of relief are properly plead as alternative claims to the breach of contract claim pursuant to the IBA.

"A quasi-contractual theory of recovery is inapplicable when the parties are bound by an express contract." *Cloverdale Equip. Company v. Simon Aerials, Inc.*, 869 F.2d 934, 939 (6th Cir. 1989). "If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract. . . In other words, alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract." *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F.Supp. 484, 491 (E.D. Mich. 1993) (citing *Shurlow Tile and Carpet Co. v. Farhat*, 60 Mich.App. 486, 491 (1975), *Campbell v. Troy*, 42 Mich.App. 534, 537 (1972)). Similarly, "promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event if fails to prove a breach of contract." *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990) (quoting *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984).

Here, the parties do not dispute the existence of a contract; but instead disagree on its scope, terms, and effect. Summary judgment is appropriate with respect to Counts IV and VI.

### 3.     Accounting

Defendants argue that Plaintiffs are not entitled to an accounting. Plaintiffs seek a judgment compelling Defendants, at their expense, "to retain a third-party professional to prepare a true and accurate accounting of winter covers purchased from the Far East Region and liquid pool products purchased from sources other than Patterson Laboratories." (Compl. ¶ 35).

As an accounting is an equitable claim, a party seeking such a claim must not have an adequate remedy at law. *Wilson v. Continental Development Co.*, 112 F.Supp.2d 648, 663 (W.D. Mich. 1999), citing *Eyde v. Empire of America Fed. Sav. Bank*, 701 F.Supp. 126, 130 (E.D. Mich. 1988). The plaintiff has the burden of proving the inadequacy of legal remedies. *Id*. Further, accounting is not necessary where discovery is sufficient to determine the amounts in question. *Id*.

Plaintiffs argue that since (1) discovery is not yet closed, (2) Defendants have not provided purchase orders between Kwang Sung and Cantar, (3) Kwang Sung and Cantar have not fully complied with subpoenas issued, and (4) depositions are still scheduled; it is premature for the Court to consider the claim for accounting. Plaintiffs have not demonstrated that there is an inadequate remedy at law or that discovery will not produce sufficient evidence to determine what damages, if any, may have been caused by the alleged breach of the IBA. Further, discovery on this matter continues until the date of trial, January 22, 2007. As such, Defendant's Motion for Summary Judgment regarding the claim for accounting is DENIED without prejudice.

### B. Plaintiffs' Motion for Additional Discovery

Plaintiffs also filed a Motion for Additional Discovery, asserting that additional discovery is needed to properly oppose Defendants' Motion for Summary Judgment. Defendants' Motion for Summary Judgment was filed on April 28, 2006. Plaintiffs filed a 19 page Response on May 27, 2006. Plaintiffs did not file the Motion for Additional Discovery until June 16, 2006, well after they had already responded to Defendants' Motion for Summary Judgment. Plaintiffs cite Defendants' lack of cooperation with discovery requests as the reason additional discovery is requested.

At a settlement conference on September 25, 2006, the Court extended discovery until January 22, 2007 for the purpose of deposing non-party witnesses from Kwang Sung Company, Ltd.,

Kwan Sung America, Inc., Cantar and Swimline. This Motion is now MOOT.

Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment **[Docket No. 52, filed April 28, 2006]** is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Additional Discovery **[Docket No. 58, filed May 30, 2006]** is MOOT.

IT IS FURTHER ORDERED that Count II: Breach of Contract - Liquid Pool Products, Count IV: Promissory Estoppel - Moon, Count V: Promissory Estoppel - Plaintiff Patterson Laboratories, and Count VI: Unjust Enrichment/Quantum Meruit - Moon are DISMISSED with prejudice.

                                        s/ DENISE PAGE HOOD
                                        DENISE PAGE HOOD
                                        United States District Judge

DATED: January 8, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 8, 2007, by electronic and/or ordinary mail.

                                        s/William F. Lewis
                                        Case Manager