**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOON S. MOON, an individual,
and PATTERSON LABORATORIES,
INC., a Michigan corporation,

                             Plaintiffs,

                                                  Case No. 05-70228

v.

                                                  HONORABLE DENISE PAGE HOOD

SCP POOL CORPORATION and
SCP DISTRIBUTORS, L.L.C.,
foreign corporations,

                             Defendants.
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Motion for Reconsideration, filed January 19, 2007 and Defendants' Renewed Motion for Summary Judgment or, in the Alternative, Motion in Limine Regarding Damages, filed February 16, 2007.[1]  Plaintiffs filed a Brief in Opposition on February 28, 2007.  Defendants filed a Reply on March 1, 2007 and Plaintiffs filed a Sur-Reply on March 2, 2007.

Also before the Court are the parties' Motions in Limine.  Plaintiffs filed a Motion in

---

[1] Defendants make the same arguments in the Renewed Motion for Summary Judgment as in the Motion for Reconsideration, however, the Motion for Reconsideration contains no evidentiary support for the assertions contained therein.  Subsequent to the January 19, 2007 filing of the Motion for Reconsideration, on February 13, 2007, the depositions were taken of Chul Kim, President and sole owner of KSA, and Sonny Shin, Vice President of Sales and Marketing of KSA.  The testimony of these two individuals is the central evidentiary support for Defendants' arguments in the Renewed Motion for Summary Judgment.

Limine on September 18, 2006.  Defendants filed a Response on October 5, 2006.  Defendants filed a Motion in Limine on September 19, 2006.  Plaintiffs filed a Response on October 3, 2006 and Defendants filed a Reply on October 10, 2006.

## II.     STATEMENT OF FACTS

Plaintiff Joon S. Moon is the owner of Plaintiff Patterson Laboratories, Inc. ("Patterson"), a company that produced pool hypochlorite and pool antifreeze.  (Compl. ¶ 6).  Defendants SCP Pool Corporation and SCP Distributors, LLC ("SCP") are the largest wholesale distributor of swimming pool supplies and related equipment.  (Compl. ¶ 5).  Plaintiff Moon had contacts with a Far East manufacturer, Kwang Sung Company, Ltd.  (Compl. ¶ 9).  On January 8, 1999, Plaintiff Moon and Defendants entered into an Import Broker Agreement ("IBA").  (Compl. ¶ 11).  The IBA requires Defendants to pay Plaintiff Moon a commission on the purchase amount of products purchased pursuant to the IBA.  (Compl. ¶ 13).  Plaintiffs allege that Defendants began purchasing winter covers in violation of the IBA. (Compl. ¶ 14-15).  Plaintiffs also allege that Defendants have failed to pay Plaintiff Moon commissions owed under the IBA.  (Compl. ¶ 16).  The relevant portions of the IBA read:

> 1)     The Company grants the Import Broker the exclusive right to purchase winter covers within the Far East Region only, provided that the pricing, quantity, quality, and other material terms of any purchase by the Import Broker must be approved by the Company in writing before such purchase is binding on the Company.
>
> 2)     A commission of 5% of the net purchase amount (which includes all discounts and rebates received by the Import Broker) of the products shall be paid by the Company to the Import Broker.
>                *                              *                              *
> 5)     The Company shall have the right to purchase winter covers (imported or domestically produced) from any company that is based in the United States or Europe, such as but not limited to, Cookson/Pacific, Swimline, Cantar, Century Products.

2

(Defs.' Mot. Summ. J., Ex. A-1).

### III.    APPLICABLE LAW & ANALYSIS

#### A.    Motion for Reconsideration

The Local Rules of the Eastern District of Michigan provide that any motion for reconsideration shall be served not later than ten days after entry of such order. E.D. Mich. LR 7.1(g)(1). No response to the motion and no oral argument thereon shall be allowed unless the Court, after filing the motion, otherwise directs. E.D. Mich. LR 7.1(g)(2). Local Rule 7.1.(g) further states:

> (3) **Grounds.** Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(g)(3).

#### B.    Motion in Limine

Under the Federal Rules of Evidence, the first step for the trial court is to determine whether the evidence sought to be admitted is relevant. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 403 excludes relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of the issues.

Additionally, Federal Rule of Evidence 404(b) excludes the introduction of evidence

regarding "other crimes, wrongs, or acts" to prove character, but this evidence may be admissible for another purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b).

### A. Defendants' Motion for Reconsideration and Renewed Motion for Summary Judgment or in the Alternative Motion in Limine

Defendants assert that it is necessary for the Court to reconsider its January 8, 2007 Order, wherein Defendants' Motion for Summary Judgment was granted in part and denied in part and Plaintiffs' Motion for Additional Discovery was deemed moot. Defendants argue that the Court incorrectly ruled that "[w]hether or not Kwang Sung America is a company 'based' in the United States is ambiguous," which was the central basis of the Court's denial of Defendants Motion for Summary Judgment as to Plaintiffs' breach of contract claim regarding the IBA (Count I). (January 8, 2007 Order, Docket No. 74, p. 6). Defendants assert that the Court's ruling was based on the assumption that Kwang Sung America, Inc. ("KSA") is an American subsidiary of a Far East parent company, Kwang Sung, Ltd. ("KSL"). However, Defendants contend that the February 13, 2007 deposition testimony of Chul Kim, President and sole owner of KSA, and Sonny Shin, Vice President of Sales and Marketing of KSA, establish that KSA is not a subsidiary or corporate affiliate of KSL. (Defs.' Renewed Mot. at 1, 4). Defendants maintain that "[t]he two companies have no ownership or shareholders in common, have no exclusive arrangement, and have no written agreement. Instead, KSA merely purchases from KSL and resells its product in the United States, on a non-exclusive case-by-case basis." *Id.* at 4-5.

Defendants further argue that in light of this new evidence, which purportedly establishes

that there is no legal nexus between the two companies, "the interpretation of the IBA is abundantly clear." *Id.* at 6. Specifically, Defendants argue that because KSA is a domestic company, "based in" the United States, their purchases from KSA are not purchases that violate the IBA, as purchases from a domestic company do not violate the IBA.

Plaintiffs counter that the provisions of the IBA are ambiguous. Plaintiffs point the Court to the website of Kwang Sung, www.polytarpaulin.com, which Plaintiffs assert demonstrates that KSL is the central company and there are three facilities, KSA being one of them. Regarding the website, Defendants argue that this is not a corporate document and is merely marketing hype that does not tend to prove a corporate relationship. (Defs.' Reply at 2).

The Court finds otherwise. The Court finds that the website may be viewed as contradictory to the testimony of Mr. Kim and Mr. Shin. This creates a genuine issue of material fact as to whether KSA is a subsidiary of, or otherwise related to, KSL and establishes an ambiguity as to whether KSA is a company "based" in the United States. Claim I: Breach of Contract - Import Broker Agreement remains a triable claim.

With respect to damages, Defendants assert that references to purchases from Cantar, Swimline and Century Products should be excluded from evidence because Defendants were expressly permitted to purchase from these entities pursuant to Paragraph 5 of the IBA. Plaintiffs, on the other hand, contend that by entering into the IBA, Dr. Moon restricted SCP's ability to purchase winter covers from the Far East, except through Dr. Moon. Plaintiffs argue that Defendants' narrow interpretation of the IBA would negate Dr. Moon's exclusive right under Paragraph 1 of the IBA. Plaintiffs further argue that Paragraphs 1 and 5 must be read together in recognition of the exclusivity provision contained within Paragraph 1. Plaintiffs

5

assert that Paragraph 5 permits SCP to purchase Far East covers through a domestic company, such as Cantar or Swimline, "to afford SCP the benefits of warehousing, returns and warranty it perceived it could only get with a domestic company." (Pls.' Br. in Opp'n. at 4-5). However, it is Plaintiffs' contention that the fact that the IBA permits SCP to purchase through other companies "does not undermine or limit Dr. Moon's right to receive commissions as purchasing agent when those winter covers originate in the Far East." *Id.* Defendants counter that Plaintiffs overlook the clear language of the IBA, which provides that Defendants can purchase winter covers from these companies, whether "imported or domestically produced."

In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties. *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself. *Id.* If the intent is clear from the language of the contract itself, there is no place for further consideration or interpretation of the agreement. *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999). However, contract provisions are considered ambiguous when the "terms are reasonably and fairly susceptible to multiple understandings and meanings." *Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998) (*citing Michigan Mut. Ins. Co.*, 204 Mich. App. at 81).

The Court has reviewed the language of the IBA, and finds that the commissions to which Dr. Moon is entitled relate to the purchases explicated in Paragraph 1 of the IBA. Whether or not this paragraph is intended to be read in conjunction with Paragraph 5, recognizing the exclusivity of Dr. Moon in the Far East region is ambiguous. A reading of Paragraph 2, which provides that the Import Broker "provide a written statement of all products

6

purchased under the provisions of this Agreement," might support an interpretation inconsistent with this reading of Paragraphs 1 and 5. (Compl. Ex. A). However, Plaintiffs' argument that to allow domestic companies to sell imports from the Far East region necessarily negates the exclusivity provision of Paragraph 1 has merit, especially to the extent such imports might result from the efforts of Dr. Moon. Defendants Motion in Limine with respect to damages relating to Cookson/Pacific, Swimline, Cantar and Century Products is DENIED WITHOUT PREJUDICE. Plaintiffs are not precluded from introducing testimony relating to any purchases Defendants made from these entities.

The Court notes that this Motion in Limine sounds in a Motion for Summary Judgment and because these issues do not seem to have arisen from new discovery, it is filed out of time.

      **B.**      **Plaintiffs' Motion in Limine**

            **1.**      **Benson Pump Deal**

The parties represent to the Court that they have resolved this Motion in Limine, except insofar as it relates to the redactions to the Asset Purchase Agreement. At oral argument, the parties stipulated that only redacted portions of the Asset Purchase Agreement will be admitted as Defense Exhibit 3. The parties further stipulate that the Asset Purchase Agreement, with attachments and exhibits, is approximately 390 pages. This stipulation may be presented to the jury.

Plaintiffs' Motion in Limine is MOOT.

      **C.**      **Defendants' Motions in Limine**

The parties represent to the Court that they have resolved Defendants' Motions in Limine relating to expert witnesses, discovery after the Pretrial Conference and Thomas Kizer as a

witness. Defendants' Motions in Limine are therefore MOOT.

### 1. Exhibits in the Final Pretrial Order

The parties represent that they have resolved all of Defendants' objections to exhibits in the Final Pretrial Order, except objections to Plaintiffs' Exhibits 12 and 13. As these matters may be addressed during trial, Defendants' Motion in Limine relating to exhibits in the Final Pretrial Order is DENIED WITHOUT PREJUDICE.

Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion for Reconsideration **[Docket No. 75, filed January 19, 2007]** and Defendants' Renewed Motion for Summary Judgment or, in the Alternative, Motion in Limine Regarding Damages **[Docket No. 78, filed February 16, 2007]** is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine **[Docket No. 63, filed September 18, 2006]** is MOOT.

IT IS ORDERED that Defendants' Motion in Limine **[Docket No. 65, September 19, 2006]** is: MOOT with respect to Plaintiffs' expert witnesses; MOOT with respect to discovery after the pretrial conference; MOOT with respect to Thomas Kizer; and DENIED WITHOUT PREJUDICE with respect to the exhibits in the Final Pretrial Order.

s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: March 5, 2007